## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-14155-CIV-CANNON/MAYNARD

**ANAMARIA RUSSO,**

      **Plaintiff,**

v.

**COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,**

      **Defendant.**

_____/

### REPORT AND RECOMMENDATION

    **THIS CAUSE** is before me on Plaintiff's Motion for Summary Judgment [DE 19] and Defendant's Motion for Summary Judgment/Response [DE 22].  Plaintiff has filed a Reply. DE 23.  Having reviewed the pleadings, and the administrative record, I respectfully **RECOMMEND** that Defendant's administrative decision be **AFFIRMED** for the reasons set forth below.

### BACKGROUND

    This case involves a determination of Plaintiff Anamaria Russo's ("Plaintiff's") applications for disability insurance benefits and for supplemental security income benefits filed on August 13, 2018.  Plaintiff alleged disability beginning on November 18, 2017, due to degenerative disc disease of the cervical and lumbar spine, peripheral neuropathy, hypertension, anxiety disorder, and panic disorder.  R. 11-20, 241-253.[1]

---

[1] A 592-page certified transcript [DE 14] contains the entire administrative record.  The transcript index [DE 14 at page 2-6] identifies each document or set of documents by exhibit number and description.  I will cite to the transcript as "R." followed by the page number(s) listed on the index and located at the bottom right-hand corner of each page.

Plaintiff was 54 on her alleged onset date with a high school education and past relevant work as a Fast Food Manager. R. 11, 19, 47.  Plaintiff's application was denied initially and upon reconsideration.  R. 11, 131, 135, 144, 151.  At Plaintiff's request, Administrative Law Judge ("ALJ") Lawrence Levey held a hearing on April 20, 2020.  R. 11, 41.  Plaintiff was represented. R. 41.  The ALJ issued an unfavorable decision on May 13, 2020, finding Plaintiff not disabled from November 18, 2017, through May 13, 2020.  R. 11-20.

On January 29, 2021, the Appeals Council denied Plaintiff's timely request for review, making the ALJ's decision the final decision of the Commissioner.  R.1-7.  Plaintiff has exhausted her administrative remedies and now seeks judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

To qualify for Social Security benefits, a claimant must show that she is disabled.  *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. §§ 404.1512(a), 416.912(a).  The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).

A disability benefits claim follows a multi-layered process before it can be reviewed in federal court.  A claimant first applies to a state agency for disability determinations, 42 U.S.C. § 421(a), after which the claimant is entitled to an evidentiary hearing before an ALJ.  *Heckler v.*

*Day*, 467 U.S. 104, 106–07 (1984).  An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled.  20 C.F.R. § 404.1520(a)(1).  This five-step process determines if a claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"); (4) can perform past relevant work based on a residual functional capacity ("RFC") assessment; and (5) retains the ability to perform any work in the national economy.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); *Hines–Sharp v. Comm'r of Soc. Sec.*, 511 Fed. Appx. 913, 915 n.2 (11th Cir. 2013).  If an individual is found disabled or not disabled at any step, further inquiry is unnecessary.  20 C.F.R. § 416.920(a).

A claimant may appeal an ALJ's unfavorable decision to an Appeals Council that must review the case and determine if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record."  *Heckler*, 467 U.S. at 106-07; 20 C.F.R. § 404.970(a).  After completing the foregoing administrative process, a claimant may seek review in federal court.  42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).

Under governing regulations, the Social Security Administration conducts its "administrative review process in an informal, non-adversarial manner."  20 C.F.R. § 404.900(b). Unlike judicial proceedings, social security administrative hearings "are inquisitorial rather than adversarial."  *Washington*, 906 F.3d at 1364 (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'"  *Id.*

Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

On review in federal court, the scope of review is limited to determining if (1) substantial evidence supports the Commissioner's findings, and (2) the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). To make this determination, a reviewing court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*

In testing for substantial evidence, a court may not "reweigh the evidence" or "decide the facts anew." *Winschel*, 631 F.3d at 1178. Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the court must defer to the ALJ's decision even if the evidence preponderates against it. *Crawford*, 363 F.3d at 1158-59. However, the court will not "merely rubber-stamp a decision ... [and] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019); *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) ("Within this narrowly limited role, however, the federal courts 'do not act as automatons' … '[w]e retain an important duty to 'scrutinize the record as a whole'

and determine whether the agency's decision was reasonable") (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).  Remand is appropriate for further factual development where the record reveals evidentiary gaps that result in unfairness or clear prejudice.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018).

A reviewing court is also required to review the ALJ's decision to determine if the correct legal standards were applied.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide sufficient reasoning for determining that the proper legal analysis has been conducted, then the ALJ's decision must be reversed.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## THE ALJ'S DECISION

The ALJ in this case proceeded through the five-step analysis as follows:  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. R. 13. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, peripheral neuropathy, and hypertension.[2]  R. 13.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment in the Listings.  R. 15.  As a predicate to step four, the ALJ found that Plaintiff had the RFC to perform work at the light level with the following additional limitations: Plaintiff must have the opportunity to sit briefly after approximately 30 minutes of standing. R. 15-16.  The ALJ also found that Plaintiff can occasionally use her left lower extremity to push, pull, and operate foot controls, can frequently but not constantly rotate, flexion, and extend her neck independently

---

[2] As discussed *infra*, the ALJ also noted that Plaintiff had been diagnosed with generalized anxiety disorder and panic disorder but found these disorders to be non-severe.  R. 14.

of her torso, and can frequently but not constantly handle, finger, and feel with the non-dominant left upper extremity.  R. 16.  The ALJ further found that Plaintiff can frequently climb ramps and stairs, balance, kneel, and crouch, occasionally stoop and crawl, but can never climb ladders, ropes, and scaffolds.  Lastly, the ALJ found that Plaintiff must avoid concentrated exposure to extreme cold and vibration. R. 16.  At step four, based on testimony from a vocational expert ("VE"), the ALJ found that Plaintiff could perform her past relevant work as a fastfood manager as it is generally performed.  R. 19.  Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act from August 13, 2018, through the date of the decision.  R. 19-20.

## DISCUSSION

Plaintiff makes three arguments in her motion for remand:

(1) The ALJ's rejection of the medical opinion of Board-Certified Orthopedic Surgeon Alexander M. Lenard is not supported by substantial evidence based on Eleventh Circuit precedent.

(2) Even under recent Social Security Administration rules amending the treating physician rule, the ALJ's rejection of the medical opinion of Board-Certified Orthopedic Surgeon Alexander M. Lenard is not supported by substantial evidence.

(3) The ALJ's finding that Ms. Russo's general anxiety disorder and panic disorder are non-severe is not supported by substantial evidence.

## A.   WHETHER ALJ ERRED BY REJECTING DR. LENARD'S MEDICAL OPINION BASED ON ELEVENTH CIRCUIT PRECEDENT REGARDING THE TREATING PHYSICIAN RULE

Plaintiff's argument that the ALJ was required to apply the treating physician rule—or the substantial equivalent based on Eleventh Circuit precent—fails. DE 19 at 15.  Under the previous treating physician rule, the ALJ was required to give a treating physician's opinion "substantial or considerable weight unless good cause [was] shown to the contrary."    *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240

(11th Cir. 2004)).  Claims filed on or after March 27, 2017, however, "are governed by a new regulation prescribing somewhat different standards for the handling of opinions from treating physicians."  *Schink*, 935 F.3d at 1259, n. 4 (citing 20 C.F.R. § 404.1520c).

Despite new governing regulations, Plaintiff argues that Eleventh Circuit precedent requiring ALJ's to adhere to the treating physician rule is essentially intact.  In support, Plaintiff relies on the Eleventh Circuit's opinion in *Simon v. Comm'r, Soc. Sec. Admin.*, 1 F.4th 908, 918 (11th Cir.), *opinion withdrawn and superseded on reh'g*, 7 F.4th 1094 (11th Cir. 2021).[3] Specifically, Plaintiff argues that the Eleventh Circuit acknowledged in *Simon* that the Social Security Administration regulations and caselaw precedent are independent sources of law.  DE 19 at 15-16.  Upon rehearing, however, the *Simon* Court said: "Because [Plaintiff] filed his claim in March of 2015, we need not and *do not consider how the new regulation bears upon our precedents* requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise."  *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104, n. 4 (11th Cir. 2021) (emphasis added).  Furthermore, the Eleventh Circuit has since held that because the new regulation "falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates our earlier precedents applying the treating-physician rule."  *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022).  Thus, I find that Plaintiff's argument that Eleventh Circuit precedent mandates continued application of the treating physician rule provides no grounds for relief.

---

[3] In *Simon*, the Eleventh Circuit said: "our own case law is clear that a treating physician's conclusions must be given 'substantial or considerable weight' unless ther is 'good cause' to discount them."  *Simon v. Comm'r, Soc. Sec. Admin.*, 1 F.4th 908, 918 (11th Cir.), *opinion withdrawn and superseded on reh'g*, 7 F.4th 1094 (11th Cir. 2021) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  Prior to rehearing and issuance of a superseding opinion, the Eleventh Circuit's opinion included a footnote explaining that the amended regulation directed ALJs to consider factors about medical opinions that "continue[d] to indicate the importance of treating physicians' opinions."  *Id.* at n. 4.

### B.     WHETHER THE ALJ FINDING THAT ORTHOPEDIC SURGEON'S OPINION WAS UNPERSUASIVE IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff argues that, even under the new regulations applicable to Plaintiff's claim, the ALJ's rejection of the opinion of orthopedic surgeon, Dr. Lenard, is not supported by substantial evidence. DE 19 at 20 (citing 20 C.F.R. § 404.1520c(b)(2)). Specifically, Plaintiff contends that Dr. Lenard's opinions are much more persuasive and supportable than those of the state agency consultants, which the ALJ found generally persuasive. *Id.* at 19-20.

For disability cases filed after March 27, 2017, an ALJ does not defer or give any specific evidentiary weight to a medical opinion. 20 CFR §§ 404.1520c(a); 416.920c(a). Instead, an ALJ assesses the persuasiveness of a medical source's opinions in light of the following five factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff, including the length, frequency, and purpose of the examining relationship; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 CFR §§ 404.1520c(c); 416.920c(a) – (c). Of these factors, supportability and consistency are the most important, and the ALJ must explain its consideration of supportability and consistency in the decision. 20 CFR §§ 404.1520c(b)(2); 416.920c(b)(2). Supportability refers to the extent to which a medical source has articulated support for his or her own opinion, while consistency refers to the relationship between the source's opinion and other evidence in the medical record. Courts have found that "[o]ther than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Freyhagen v. Comm'r of Soc. Sec. Admin.,* 2019 WL 3412616, at *4 (E.D. Mo. July 29, 2019) (*citing Mudge v. Saul*, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019)); *see also* 20 CFR § 404.1520c(b)(2) ("We may, but are not required to, explain how we

considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we considered medical opinions and prior administrative medical findings in [a claimant's] case record.").

Here, the ALJ found the opinions of the State agency medical consultants, Andriana Gioia, M.D. and Jolita Burns, M.D. generally persuasive and the opinion of Dr. Lenard unpersuasive. The ALJ explained her findings regarding the persuasiveness of these opinions as follows:

> The opinions of the State agency medical consultants, Andriana Gioia, M.D. and Jolita Burns, M.D. are generally persuasive. Both doctors opined that the claimant could perform light exertional work with additional postural and environmental limitations. (Exhibits 2A/4A; 6A/8A). Generally, these opinions are consistent with the claimant's normal neurological examinations, normal motor strength and an intact sensation throughout all extremities, a normal gait, and negative bilateral straight leg raise testing. (Exhibits 1F 8, 12, 13, 19, 21, 26, 27, 29, 35; 2F 10; 3F 21, 24, 26; 6F 12, 15, 21, 31, 34, 40; 10F 2, 5, 8, 15). However, considering the infrequent findings of reduced sensation in the left upper and lower extremities, left hand weakness, and antalgic gait, and in an attempt to afford the claimant the benefit of any reasonable doubt, the undersigned has assessed a somewhat greater level of impairment-related limitation.

> The opinion of Alexander Lenard, M.D. is unpersuasive. Dr. Lenard opined that the claimant would be unable to sit, stand, and walk in combination for eight (8) hours in a normal workday, would frequently have impaired attention and concentration due to symptoms, and would be absent once or twice a month due to their impairments. (Exhibit 5F). These opinions are inconsistent with the claimant's longitudinal physical examination history including normal neurological examinations, normal motor strength and an intact sensation throughout all extremities, a normal gait, and negative bilateral straight leg raise testing. (Exhibits 1F 8, 12, 13, 19, 21, 26, 27, 29, 35; 2F 10; 3F 21, 24, 26; 6F 12, 15, 21, 31, 34, 40; 10F 2, 5, 8, 15). Further, the opinion is inconsistent, as noted above, with the claimant's unremarkable mental examination findings and retained activities of daily living.

R. 18.  This summation by the ALJ fairly and accurately characterized the cited medical records.

The ALJ discussed the extensive record evidence that he cited in assessing the persuasiveness of the medical opinions when he assessed Plaintiff's subjective complaints.  R. 16-18.  Indeed, the record evidence was central to the ALJ's finding that Plaintiff's hearing testimony

"concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained …."[4] R. 16.

The ALJ found that the objective medical evidence did not support Plaintiff's testimony that she was unable to sit, stand or walk for more than 15 minutes and to lift and carry more than 10 pounds because of injuries to her lower back and neck.[5]  R. 16.  For purposes of context, the ALJ noted that Plaintiff's primary basis for alleging disability related to symptoms stemming from degenerative disc disease of the cervical and lumbar spine and focused his discussion on Plaintiff's medical records relating to her back problems.  R. 16.

The ALJ observed that Plaintiff's back surgeries provided her relief.  The ALJ first described Plaintiff's back surgeries, which occurred on April 23, 2018.[6]  R. 357, 413-418.  The ALJ then noted that, despite evidence of continued "foraminal narrowing and canal stenosis" two months after the surgeries, Plaintiff reported feeling great with no symptoms in her neck or lower back.[7]  R. 17.

---

[4] The ALJ noted that Plaintiff testified to pain in her lower back and neck and lost feeling in her lower left extremity and upper extremities causing, among other things, an inability to sit, stand, and walk for longer than fifteen minutes and an inability to carry more than ten pounds.  R. 16.

[5] Dr. Lenard noted, in examining Plaintiff on January 3, 2018, that she had been struck from behind while a restrained driver, on November 17, 2017.  R. 370.  Plaintiff was treated at a local emergency room on the same day.  *Id.*  Plaintiff reported worsening neck and back pain since the accident.  *Id.*

[6] Dr. Lenard performed surgery on Plaintiff on April 23, 2018, consisting of three procedures.  R. 413-418.  First, an L2 to L4 anterior fusion encompassing 2 levels was performed with justification stated as: "[p]atient with scoliosis, large[,] herniated disc for anterior phase anterior-posterior reconstructive procedure."  R. 413.  Second, a C6-7 anterior cervical decompression and fusion was performed with justification stated as: "[p]atient with herniated disk and persistent pain."  R. 416.  Third, a posterior segmental instrumentation with Stryker cortical screws L2 to L4 was performed with justification stated as "[t]he patient is status post anterior interbody placement for the 2nd phase of decompression and fusion procedure."  R. 418.

[7] Dr. Lenard examined Plaintiff on June 4, 2018 and noted: "Pt feels great with her neck and low back.  No symptoms … HEP [home exercise program] consist[s] of pool ex.  Not wearing collar anymore."  R. 429.

The ALJ also determined that Plaintiff's medical records, taken as a whole, indicated generally unremarkable exam findings.  The ALJ cited extensive record evidence dating from January 2018 through June 2019 to support his statement that:

> Longitudinally, the claimant's physical examination findings were relatively unremarkable and included unremarkable cervical and lumbar examinations including a full range of motion throughout with no tenderness, normal neurological examinations, normal motor strength and an intact sensation throughout all extremities, a normal gait, and negative (normal) results on bilateral straight leg raise testing.

R. 17 (citing R. 353, 357-58, 364, 366, 371-72, 374, 380, 393, 427, 430, 432, 454, 457, 463, 473, 476, 482, 563, 566, 569, 576).  This summation by the ALJ fairly and accurately characterized the cited medical records.

The ALJ also discussed Plaintiff's infrequent symptoms of reduced sensation in her left upper and lower extremities, left hand weakness and antalgic gait.  R. 17.  The ALJ noted relative to these symptoms that Plaintiff's examination records reflected longitudinally unremarkable cardiovascular and bilateral hand examinations.  R. 17 (citing 353, 357, 361, 366, 370, 374, 393, 432).  Additionally, the ALJ observed that Plaintiff's objective findings in general were relatively unremarkable and included "normal neurological examinations, normal motor strength and an intact sensation throughout all extremities, a normal gait, and negative bilateral straight leg raise testing."  R. 17 (citing R. 353, 357-58, 364, 366, 371-72, 374, 380, 393, 427, 430, 432, 454, 457, 463, 473, 476, 482, 563, 566, 569, 576).  Then, the ALJ considered the symptoms and further limited Plaintiff in determining her RFC.  R. 15-17.  The additional limitations included that Plaintiff must have an ability to sit briefly after approximately 30 minutes of standing.  R. 15-17.

Furthermore, the ALJ observed that Plaintiff's reported activities of daily living were inconsistent with her self-reported limitations relative to squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, completing tasks and using her hands.  R. 16 (citing R.

297).  Specifically, the ALJ found that such limitations were inconsistent with Plaintiff's reported ability to "take care of her grandchildren and family pets, perform her own personal care and grooming, prepare meals, perform household cleaning, go outside daily and alone, drive a vehicle, go grocery shopping, manage her own finances, play card games, watch movies, go out to eat with others, attend church, finish what she starts, and follow written and spoken instructions."  R. 17 (citing R. 292-299).  The ALJ also found that the limitations were inconsistent with the objective medical evidence, which as discussed above, consisted of unremarkable cervical and lumbar examinations.  R. 17.  Having reviewed the record, I find that the ALJ's findings are supported by the record.

Nonetheless, Plaintiff argues that that the ALJ should have found Dr. Lenard's opinion— a two-page questionnaire form completed on November 20, 2018 (R. 441-42) indicating, among other things, that Plaintiff could only sit one-half hour and stand/walk one-half hour in an 8-hour workday—persuasive.  DE 19 at 16-21.  Indeed, Plaintiff argues that Dr. Lenard's opinion, as the treating physician, should be more persuasive that the opinions of Dr. Gioia and Dr. Burns.  *Id.* Moreover, Plaintiff argues in her Reply that the ALJ erred by not discussing the "supportability" relative to Dr. Lenard's opinion.  DE 23 at 3.

Substantial evidence supports the ALJ finding Dr. Lenard's opinion unpersuasive.  The ALJ addressed both supportability and consistency because Dr. Lenard's own treatment records were primarily the records used to evaluate his opinion of November 20, 2018.  The case should not "be remanded 'simply because the ALJ did not use magic words.'  Rather, '[r]emand is only appropriate where there is no indication the ALJ applied the correctly standard.'"  *Cox v. Comm'r*, 2022 WL 834294, at *3 (N.D. Miss. Mar. 21, 2022) (*citing Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021)); *see also Frye v. Comm'r*, 2022  WL 1045719, *5 (M.D. Fla. April 7, 2022) ("The ALJ

may not have used the word 'supportability,' but he discussed the record with respect to the inconsistency of the opinions within the physician's own records, and the Court finds that to be adequate."); *Cueva v. Kijakazi*, 2021 WL 4192872, at *5 (E.D. Cal. Sept. 15, 2021) ("An ALJ need not recite any magic words to reject a physician's opinion where the record reveals specific, legitimate inferences that may be drawn from the ALJ's opinion justifying the decision not to adopt a physician's opinion.").

Dr. Lenard's opinion is not supported by and is inconsistent with his own treatment notes for the relevant period as detailed below. The record evidence indicates that Plaintiff visited with Dr. Lenard seven times between her back surgeries on April 23, 2018, and Dr. Lenard's opinion of November 20, 2018. Specifically, as summarized below, Dr. Lenard recorded findings on: May 3, 2018; May 7, 2018; June 4, 2018; August 8, 2018; September 17, 2018; October 5, 2018; and November 15, 2018.

On May 3, 2018, Dr. Lenard performed a postsurgical exam on Plaintiff. R. 481. He observed that Plaintiff was "wearing hard cervical collar, as instructed." R. 481. Dr. Lenard observed that Plaintiff was "in no acute distress." R. 482. Further, Plaintiff was "[o]riented to time, place, and person." R. 482. Plaintiff was instructed to follow up in four days for lumbar staple removal. R. 482.

At the follow up visit on May 7, 2018, Dr. Lenard noted that Plaintiff was "[f]eeling better" and was [v]ery happy with progress and relief of leg symptoms." R. 427. Plaintiff was observed to be "[w]ell developed and in no acute distress[,] and there was [n]o swelling of the back, no erythema of the back, and no tenderness on palpation of the back." R. 427. Further Plaintiff was

"[o]riented to time, place, and person" … "[m]otor strength was normal[,]" and "deep tendon reflexes were normal."[8]  R. 427.  Follow up was set for six weeks.  R. 428.

At Plaintiff's follow up appointment on June 4, 2018, Dr. Lenard observed that Plaintiff had "[n]o muscle spasm in the lower back" and "no back stiffness."  R. 429.  Dr. Lenard also noted that: "Pt feels great with her neck and low back.  No symptoms/HAs. HEP [home exercise programs] consist of pool ex. Not wearing collar anymore."  R. 429.  In addition, Plaintiff had "[n]o neck pain and no neck stiffness."  R. 430.  Plaintiff also remained symptom free with regard to her back.  R. 430.  Furthermore, Dr. Lenard noted that Plaintiff had normal motor strength and her gait and stance were normal.  R. 430.

On August 3, 2018, Dr. Lenard examined Plaintiff and noted that she had "[n]o back symptoms, no lower back pain, and [was] not with muscle spasm."  R. 431.  Furthermore, Dr. Lenard noted that there was "[n]o back stiffness[,]" and "[r]esidual left thigh numbness/dysesthesia" was "[s]lowly improving."  R. 431.  Dr. Lenard stated that Plaintiff "[o]verall [was] doing great."  R. 431.  Dr. Lenard noted "[n]o weakness" with respect to Plaintiff's hands.  R. 432.  Neurological observations included that Plaintiff was oriented to time, place, and person, and motor strength measurements were unremarkable.  Plaintiff was normal for gait and stance.  R. 432.  Follow up was set for two months.  R. 433.

---

[8] Plaintiff had her staples from her back surgery removed at this visit, and Dr. Lenard's treatment notes indicated that Plaintiff was "not able to return to work at this time for further notice."  R. 428.

On September 17, 2018, Plaintiff visited with Dr. Lenard for cervicalgia,[9] or neck pain.  R. 469, 471.  Dr. Lenard prescribed valium (10 MG) every 8-12 hours as needed for 20 days and Gabapentin[10] (100 MG) every 6-8 hours as needed for 30 days.  R. 469-70.

On October 5, 2018, Plaintiff visited with Dr. Lenard for follow up.  R. 462.  Dr. Lenard noted that Plaintiff was "[o]verall feeling well," and that "neck [was] much improved and back [was] feeling much better."  R. 462.  "Balance and fine motor [were] ok."  R. 462.  Dr. Lenard observed "no weakness" of the right or left hands, and "[t]he cervical spine showed no tenderness on palpation and not of the paracervical muscles."  R. 463.  Additionally, "[p]alpation of the lumbosacral spine revealed no abnormalities, no muscle spasms, a modified straight-leg test of the right leg was negative (sitting), and of the left leg was negative (sitting)."  R. 463.  Her calves were not swollen and not tender on palpation.  R. 453.  Dr. Lenard noted, however, that Plaintiff experienced "[r]esidual left thigh numbness/dysesthesia, [which was] bothersome, [with] more tingling now."  R. 462.  Dr. Lenard stated that it was "[s]lowly improving."  R. 462.  In addition, Dr. Lenard noted that "Gabapentin [was] not much help[;]" however, he observed that Plaintiff was "only taking 100mg."  R. 462.

On November 15, 2018, Dr. Lenard examined Plaintiff "[s]even months out from surgery." R. 456.  Dr. Lenard noted that "[o]verall [Plaintiff was] the same."  R. 456.  Additionally, Dr. Lenard observed that Plaintiff "[d]id not go to [physical therapy] for neck or back yet." Nonetheless, he noted that Plaintiff's "[n]eck [was] doing well."  R. 456.  Her "[m]ain complaint [was] left thigh pain and numbness."  R. 456. Dr. Lenard noted that Plaintiff had "[d]ecreased

---

[9] "Neck pain is medically referred to as cervicalgia."  https://www medicinenet.com/neck_pain/symptoms htm (last visited Aug. 28, 2022).

[10] Gabapentin reduces the excitability of nerve cells and has brand names that include Neurontin.  *See* https://my.clevelandclinic.org/health/drugs/21561-gabapentin (last visited Aug. 28, 2022).

response to tactile stimulation of the lateral upper aspect of the thigh." R. 457. Plan was for Plaintiff to have a computed tomography ("CT") scan to assess fusion, and she was prescribed medications for pain, including 300 MG of Gabapentin. R. 458. Dr. Lenard further observed that Plaintiff was "[w]ell developed[,]" she had no right or left hand weakness, "[a] straight-leg raising test of the right leg was negative and of the left leg was negative[,]" and her calves were "not tender on palpation." R. 457. Relative to neurological findings, Dr. Lenard stated that Plaintiff was "[o]riented to time place, and person … [n]o elbow weakness was observed, no weakness of the right wrist was observed, and no weakness of the left wrist was observed." R. 457. Furthermore, "[n]o finger weakness was observed and no flexion weakness of the fingers … [n]o knee weakness was observed and no ankle weakness was observed." R. 457. Dr. Lenard further observed: "reflexes were normal and no clonus[11] of the ankle/knee." R. 457.

As the ALJ stated, the physical exam findings above are inconsistent with Dr. Lenard's opinion regarding Plaintiff's functioning capacity. Dr. Lenard opined that Plaintiff was unable to sit, stand, and walk in combination for eight (8) hours in a normal workday, that she would frequently have impaired attention and concentration due to her symptoms and would be absent once or twice a month due to her impairments. R. 441-42. Dr.'s Lenard did not explain, however, how his exam findings supported such a determination. Because Dr. Lenard was the primary examiner of Plaintiff to this point, his exam findings support the ALJ's determination that his opinion was unpersuasive because it was with neither consistent with, nor supported by, the medical evidence of record.

---

[11] Clonus is a set of involuntary muscle movements due to damage to nerves. https://www.webmd.com/a-to-z-guides/what-is-clonus-reflex (last visited Aug. 28, 2022).

In addition, Dr. Lenard's exam findings shortly after his November 20, 2018 exam did not support his opinion.  On November 30, 2018, Plaintiff visited Dr. Lenard to review the CT scan of her cervical and lumbar spine.  R. 453.  Dr. Lenard observed that Plaintiff's "[n]eck [felt] great, and [Plaintiff had] no significant low back pain."  R. 453.  Instead, Plaintiff's "[m]ain issue [was] left anterior/lateral thigh 'tingling pain.'"  R. 453.  Dr. Lenard noted that "[t]high pain [was] helped with Neuro[n]tin [a brand name for Gabapentin]."[12]  R. 453.  Dr. Lenard additionally noted that the CT scan reflected that "the left L3 screw may be slightly lateral and contributing to her thigh symptoms."  R. 454.  The plan was a home exercise plan and follow up in 2-3 months.  R. 455.  Neurological findings were unremarkable as to motor, balance, gait and stance except that "[s]ensory exam abnormalities were noted left lateral thigh, decreased response to tactile stimulation of the upper (L2) aspect of the thigh left, and of the lower (L3) aspect of the thigh."  R. 454.

Furthermore, Plaintiff's activities of daily living, confirmed in early December 2018, were not consistent with Dr. Lenard's opinion.  Indeed, Plaintiff confirmed to the Social Security Administration on December 12, 2018, that her activities of daily living were the same as initially reported.  R. 311.  Specifically, Plaintiff confirmed that she continued to care for her grandchildren while her daughter worked, that she could do light household chores, prepare meals, drive, go shopping, had no problems with managing her financial affairs and that her hobbies still included watching tv, playing cards and painting.  R. 311.  Substantial evidence supports the ALJ's finding that Dr. Lenard's opinion was inconsistent with the record as a whole.

---

[12] Neurontin is a brand name for Gabapentin, which reduces the excitability of nerve cells. *See* https://my.clevelandclinic.org/health/drugs/21561-gabapentin (last visited Aug. 28, 2022).

As to Plaintiff's contention that Dr. Lenard's later exam findings support his opinion that Plaintiff could not work, this argument also lacks merit.  DE 19 at 18.  A review of the findings from these exams explains why they do not support Dr. Lenard's opinion.

On February 8, 2019, Dr. Lenard examined Plaintiff and noted: "Pt stopped Neuro[n]tin last month, psych changes, and left hand symptoms have gotten worse.  Left index finger completely numb and having problems gripping.  Balance unchanged."  R. 575.  Further, Dr. Lenard noted that Plaintiff had "[l]eft thigh hypersensitivity" but no back pain.  As to physical findings, Dr. Lenard stated that Plaintiff was "well developed and in no acute distress."  R. 576.  Plaintiff had no right-hand weakness.  R. 576.  With respect to Plaintiff's left hand, Dr. Lenard noted "[w]eakness – left index has full range with decreased sensation palmar surface."  R. 576.  As far as Plaintiff's lumbar/lumbosacral spine, Dr. Lenard observed "[p]alpation of the lumbosacral spine revealed abnormalities" and went on to note that "[t]he lumbosacral spine exhibited no tenderness on palpation, a straight-leg raising test of the right leg was negative, of the left leg was negative, a crossed straight-leg raising test of the right leg was negative, and of the left leg was negative."  R. 576.  As to neurological findings, Dr. Lenard stated that Plaintiff was "[o]riented to time, place, and person."  R. 576.  With respect to motor functioning, Dr. Lenard noted that:

> [m]uscle bulk was normal, the muscle tone was normal, no elbow weakness was observed, no weakness of the right wrist was observed, … no weakness of the left wrist was observed … [n]o finger weakness was observed, no lumbosacral spine weakness was observed, no hip weakness was observed, no knee weakness was observed, and no ankle weakness was observed.

R. 576.  Plaintiff's gait and stance were recorded as "normal."  R. 576.  Further, Dr. Lenard recorded Plaintiff's reflexes as "normal."  R. 576.  Dr. Lenard noted that a magnetic resonance imaging ("MRI") of the spine was needed and that follow up would occur post-MRI.  R. 577.

On February 28, 2019, Plaintiff visited Dr. Lenard for her MRI review.  R. 568.  Dr. Lenard

noted "[n]o change in symptoms" and stated that Plaintiff had "[o]ngoing left hand tingling mostly

to middle finger."  R. 568.  Dr. Lenard indicated that he "[d]iscussed with patient [that] current

hand issue [was] not related to the neck" and he recommended "ortho hand eval[uation]."  R. 570.

On April 22, 2019, Dr. Lenard examined Plaintiff for complaints of severe back left foot

burning pain that was constant, decreased sensation in her left lateral thigh and left-hand

numbness.  R. 565.  With respect to Plaintiff's left hand, Dr. Lenard noted that she was seen by a

Dr. Saylor; however, an electromyography ("EMG") that was ordered had not yet been done.[13]

R. 565.  Dr. Lenard also noted that Plaintiff was "[w]ell developed and in no acute distress" but

observed that "[p]alpation of the lumbosacral spine revealed tenderness on palpation."  R. 566.  He

also noted that "[t]he lumbosacral spine exhibited no muscle spasms, showed no pain elicited by

motion, a straight-leg raising test of the right leg was negative, of the left leg was negative, a

crossed straight-leg raising test of the right leg was negative, and of the left leg was negative."

R. 566.  As to neurological findings, Dr. Lenard stated that Plaintiff was "[o]riented to time, place,

and person."  R. 566.  He further stated that "[s]ensory exam abnormalities were noted [in] feet

and left hand and decreased response to tactile stimulation of the sole of the foot only [back left]."

R. 566.  Additionally, Dr. Lenard noted "[a]n antalgic gait was observed[,]" and he recorded

unremarkable motor findings that "[m]uscle bulk was normal, the muscle tone was normal, no

lumbosacral spine weakness was observed, no hip weakness was observed, no knee weakness was

observed, and no ankle weakness was observed."  Dr. Lenard observed that Plaintiff could not

tolerate Neurontin or Lyrica because it affected her mentally.  R. 565.  Dr. Lenard prescribed

---

[13] Plaintiff visited with Thomas F. Saylor, MD. on February 28, 2019, for left hand numbness.  R. 571.  Plaintiff additionally reported "some radiating pain and numbness down the left arm."  R. 471.  Dr. Saylor assessed a "[s]uspicion for left median neuropathy at the wrist" and ordered electrodiagnostic studies (NCV/EMG) to evaluate Plaintiff for carpal tunnel syndrome.  R. 572-73.

Mobic[14] 15 MG once a day for 30 days with 2 refills, discussed possible EMG/NCS[15] to better

elucidate the cause of her foot burning and set follow up for 6-8 weeks.  R. 567.

On June 3, 2019, Plaintiff visited with Dr. Lenard "for left lateral thigh numbness, left hand

numbness, and b/l [back left] burning foot pain that is worse with movement." R. 562.  Dr. Lenard

stated that Plaintiff "[h]ad EMG performed and it did not show any nerve damage according to

patient." R. 562.  Dr. Lenard noted that Plaintiff was taking "Mobic 15 mg QD [every day] with

improvement of symptoms." R. 562.  Dr. Lenard observed further that Plaintiff had "[n]o

weakness, fever, chills, or malaise." R. 562. As to physical findings, Dr. Lenard noted that Plaintiff

was [w]ell developed and in no acute distress." R. 563.  Regarding Plaintiff's musculoskeletal

system, Dr. Lenard observed:

> [p]alpation of the lumbosacral spine revealed no abnormalities and no tenderness
> on palpation … [t]he lumbosacral spine exhibited no muscle spasms, showed no
> pain elicited by motion, a straight-leg raising test of the right leg was negative, of
> the left leg was negative, a crossed straight-leg raising test of the right leg was
> negative, and of the left leg was negative.

R. 563.  With respect to neurological findings, Dr. Lenard stated that "[s]ensory exam

abnormalities were noted [in] feet and left hand and decreased response to tactile stimulation of

the sole of the foot only B/L [back left]." R. 563.  Dr. Lenard further observed that "[m]uscle bulk

was normal, no lumbosacral spine weakness was observed, no lower extremity weakness was

observed, no hip weakness was observed, no knee weakness was observed, and no ankle weakness

was observed." R. 563.  "An antalgic gait was observed." R. 563.  Additionally, Dr. Lenard

---

[14] Mobic "is a nonsteroidal anti-inflammatory drug (NSAID) used to relieve the symptoms of arthritis."
https://www.mayoclinic.org/drugs-supplements/meloxicam-oral-route/side-effects/drg-20066928?p=1 (last visited
Aug. 28, 2022).

[15] NCS, or nerve conduction studies, are done to determine the health of the nerves.
https://www.nmhs.net/connect/my-provider-has-ordered-an-emgncs-test-now-what/ (last visited Aug. 28, 2022).

reported that "[t]he deep tendon reflexes were normal, no clonus of the ankle/knee, and Hoffman's sign[16] was not demonstrated."  R. 563.  Dr. Lenard noted that he discussed further treatment options with Plaintiff: "Rehab/pain eval/surgery … Patient to consider … HEP [home exercise program]."  R. 564.  Follow up was established for 3 months.  R. 564.  No further records of visits to Dr. Lenard are indicated.

Dr. Lenard's more recent exam findings do not contradict the ALJ's finding that Dr. Lenard's opinion regarding Plaintiff's limitations—and inability to work—was unpersuasive for two reasons.  First, the later exam findings are too remote from Dr. Lenard's opinion to support it.  Second, the examination findings do not support that Plaintiff's limitations are as severe as Dr. Lenard opined.[17]  Thus, I conclude that the ALJ's finding that Dr. Lenard's November 20, 2018, opinion was unpersuasive is supported by substantial evidence.[18].

### C.    WHETHER THE ALJ'S FINDING THAT PLAINTIFF'S GENERAL ANXIETY DISORDER AND PANIC DISORDER ARE NON-SEVERE IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff's argument that the ALJ erred by not considering Plaintiff's mental impairments severe at step two is without merit.  Specifically, Plaintiff contends that "the ALJ imposed a greater than *de minimis* standard at step-two" in determining that Plaintiff's mental impairments were non-severe.  DE 19 at 21-23 (citing *Albers v. Comm'r of Soc. Sec.*, No. 6:15-CV-1034-ORL-GJK, 2016 WL 4162771, at *2 (M.D. Fla. Aug. 4, 2016) (citing, among other authority, *Brady v. Heckler*, 724

---

[16] Hoffman's sign is a screening tool for spinal cord compression.  https://www.ncbi nlm nih.gov/books/NBK545156/ (last visited Aug. 28, 2022).

[17] I additionally note, as previously discussed, that the ALJ "assessed a somewhat greater level of impairment-related limitation" in determining Plaintiff's RFC to account for "reduced sensation in the left upper and lower extremities, left hand weakness, and antalgic gait."  R. 18.

[18] It is unnecessary to discuss and compare Dr. Lenard's opinion with the opinions of the State agency medical consultants, Dr. Gioia and Dr. Burns.  Plaintiff does not take any specific issue with the reports of the state agency doctors.  Rather, Plaintiff complains generally that the State agency consultants' opinions should not be credited to the same extent as Dr. Lenard's opinion.  DE 19 at 19-21.

F.2d 914, 920 (11th Cir. 1984)).  Plaintiff bases her argument on the findings of a psychological evaluation that Jonathan R. Black, Psy.D. completed on October 3, 2018, and Plaintiff's hearing testimony. DE 19 at 21-23; DE 23 at 3-4.

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii).  A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work and must last continuously for at least twelve months. *See* 20 C.F.R. § 404.1505(a).  This step two inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950 (11th Cir. 2014) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).  While the standard for severity is low, the severity of an impairment "'must be measured in terms of its effect upon ability to work.'" *D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 945 (11th Cir. 2010) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).  Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1522(b); *Titles II & XVI: Med. Impairments That Are Not Severe*, SSR 85-28, 1985 WL 56856, at *4.

"Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Instead, the ALJ must only consider a claimant's impairments in combination, whether severe or not. *Id.*  If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison*, 814 F.2d at 588).  "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-842 (11th Cir. 2014) (internal

citations omitted).  This means that as long as the ALJ considered Plaintiff's severe impairments in combination with his non-severe impairments, any potential error at step two is harmless.  *Id.*

Here, at step two, the ALJ found Plaintiff had the following severe combination of impairments: degenerative disc disease of the cervical and lumbar spine, peripheral neuropathy, and hypertension.  R. 13.  The ALJ further found that Plaintiff's medically determinable mental impairments of a generalized anxiety disorder and a panic disorder, considered singly and in combination, did not rise to the severe level because they did not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities.  R. 14.  In making this non-severity finding, the ALJ considered four broad areas of mental functioning, known as the "paragraph B" criteria.  R. 14-15; 20 C.F.R. § 404.1520a(c)(3).  These four areas consist of: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).  If an ALJ finds that the degree of limitation in these four areas is "none" or "mild," then the ALJ will generally conclude that the mental impairment is not severe.  20 C.F.R. § 404.1520a(d)(1).  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a).

Here, the ALJ found that Plaintiff had "mild limitation" in all four areas of mental functioning.  R. 14.  To support these findings, the ALJ cited to Plaintiff's hearing testimony, her function report and observations recorded in her medical records.  R. 14.  At the hearing, Plaintiff testified that she received no psychological treatment during the period of adjudication.  R. 14 (citing R. 54).  In her function report, as discussed previously, Plaintiff indicated that she could "take care of her grandchildren and family pets, perform her own personal care and grooming,

prepare meals, perform household cleaning, go outside daily and alone, drive a vehicle, go grocery shopping, manage her own finances, play card games, watch movies, go out to eat with others, attend church, finish what she starts, and follow written and spoken instructions." R. 14 (citing R. 292-299). Furthermore, the ALJ noted that a review of Plaintiff's medical records indicated that Plaintiff reported no feelings of hopelessness, irritability, being down or depressed, and no loss of pleasure from usual activities nor lack of interest in doing things. R. 14 (citing R. 354). The ALJ noted that the only psychological medical record available was from an October 2018 consultative examination. R. 14 (citing R. 434-39). In that assessment, Jonathan R. Black, Psy. D., observed that Plaintiff had an anxious mood and affect but had unremarkable content of thought. R. 14 (citing R. 435). In addition, Dr. Black noted a fair abstraction ability, a fair fund of knowledge, fair insight and judgment, normal orientation and memory, and the ability to perform simple arithmetic and calculations. R. 14 (citing R. 435-36). Therefore, given the lack of objective evidence, the ALJ concluded that Plaintiff had no more than a mild limitation in any of the four areas of functioning. R. 14.

The ALJ found the equivalent findings of the of State agency psychological consultants, Pamela D. Green, Ph.D., and Lawrence Annis, Ph.D., persuasive and consistent with the record. R. 14 (citing R. 72-83, 98-112). The State agency consultants found that Plaintiff had no more than mild restrictions in any of the part B domains and that her psychological impairments were non-severe. R. 14 (citing R. 77, 105). In determining that these findings were consistent with the record, the ALJ noted that Plaintiff indicated in her function report and at the hearing that she did not have problems getting along with others or in memory, concentration, or understanding. R. 14 (citing R. 43-70, 292-99). Further, the ALJ reasoned that Plaintiff exhibited the ability to perform a wide range of daily and social activities. R. 14. Additionally, the ALJ observed that Plaintiff

demonstrated a normal orientation and memory at her psychological consultative examination and denied to her treating sources that she was experiencing psychological abnormalities.  R. 14. Accordingly, the ALJ determined that Plaintiff's mental impairments caused no more than a minimal limitation in Plaintiff's ability to do basic work activities and were, therefore, non-severe. R. 15.

As to Dr. Black's opinion that Plaintiff had an impaired ability to function occupationally due to mental health symptoms, the ALJ found the opinion unpersuasive for several reasons.  R. 15 (citing R. 436).  First, the ALJ noted that Dr. Black's opinion was not presented in vocationally relevant language as required to determine a function-by-function RFC.  R. 15.  Thus, the ALJ found Dr. Black's opinion vague.  R. 15.  Second, the ALJ found Dr. Black's opinion inconsistent with his own findings, including that Plaintiff had normal orientation and thought content, demonstrated an ability to recall three of three objects immediately and after delay and performed simple arithmetic and calculations.  R. 15.  Third, the ALJ found that the opinion was inconsistent with the lack of routine psychological treatment to corroborate it.  R. 15.  Fourth, the opinion was inconsistent with Plaintiff's indications in her function report and generally with her hearing testimony indicating that she did not have problems getting along with others or in memory, concentration, or understanding.  R. 15.  Fifth, the opinion was inconsistent with Plaintiff's engagement in a wide range of daily and social activities.  R.15.  Sixth, the opinion was inconsistent with Plaintiff's denials to treating sources that she was experiencing psychological abnormalities.  R. 15.

Nonetheless, Plaintiff argues that the ALJ's findings omit her hearing testimony that her anxiety and depression have been getting much worse and that she gets upset at her inability to do a lot of things she used to do to the point she feels like she "can't breathe" and "is having a heart

attack." DE 19 at 23. "Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses." *Abreu v. Berryhill*, No. 18-21029-CIV, 2019 WL 3219443, at *2 (S.D. Fla. Jan. 15, 2019), *report and recommendation adopted*, No. 18-21029-CIV, 2019 WL 3216037 (S.D. Fla. July 17, 2019) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971)). A reviewing court's role is to determine that the proper legal standards were applied and that substantial evidence supports the Commissioner's decision. *Graham*, 129 F.3d at 1422; *Crawford*, 363 F.3d at 1158-59. Here, the ALJ set forth the correct legal standard and governing regulations to be employed at step two, and his finding that her mental impairments did not cause more than minimal limitation in her ability to perform basic mental work activities is substantially supported. Therefore, the ALJ's decision in this regard should be affirmed.

## CONCLUSION

Upon consideration of the parties' submissions and the administrative record, I find that Plaintiff failed at the administrative level to carry her burden to demonstrate that she is disabled or more limited in her RFC than the ALJ found based on her physical or mental impairments. Accordingly, Defendant's administrative decision is supported by substantial evidence and should be affirmed. I thus respectfully **RECOMMEND** that Defendant's final administrative decision be **AFFIRMED**; that Plaintiff's Motion for Summary Judgment [DE 19] be **DENIED**; that Defendant's Motion for Summary Judgment [DE 22] be **GRANTED**; and that a final judgment be entered in Defendant's favor.

## NOTICE OF RIGHT TO OBJECT

Because this referred matter has been pending for a long time, and to promote judicial economy and finality to the parties, a prompt resolution is required. As such, I find it necessary and appropriate to shorten the time for any objections pursuant to Southern District of Florida

Magistrate Judge Rule 4(a).  Accordingly, the parties shall have SEVEN (7) DAYS from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Aileen M. Cannon.  *See* 28 U.S.C. § 636(b)(1)(C); S.D. Fla. Mag. J. R. 4(a).  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

      **DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 31st day of August, 2022.

SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE